UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRICIA A.,[1] | ) |
|          *Plaintiff,* | ) ) ) |
|          *v.* | ) )   No. 1:20-cv-02738-MG-JPH |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the Social Security Administration, | ) ) ) ) |
|          *Defendant.* | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In May 2018, Plaintiff Patricia A. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of April 16, 2018. [Filing No. 11-5 at 2-7.] Her applications were initially denied on August 13, 2018, [Filing No. 11-3 at 10-21; Filing No. 11-4 at 3-11], and upon reconsideration on November 19, 2018, [Filing No. 11-3 at 22; Filing No. 11-4 at 11-19]. Administrative Law Judge Rita Elizabeth Foley (the "ALJ") conducted a video hearing on December 6, 2019. [Filing No. 11-2 at 61-95.] The ALJ issued a decision on December 24, 2019, concluding that Patricia A. was not entitled to receive benefits. [Filing No. 11-2 at 34-49.] The Appeals Council denied review on August 25, 2020. [Filing No. 11-2 at 2-5.] On October 22, 2020, Patricia A. timely filed this civil action asking the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named Acting Commissioner.

Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 14.] For the reasons set forth below, this Court **AFFIRMS** the ALJ's decision denying Patricia A. benefits.

## I.
## STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th

---

[3] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects.

Cir. 2020) (quoting *Beardsley v. Colvin,* 758 F.3d 834, 837 (7th Cir. 2014)). Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley,* 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Prince,* 933 F.2d at 602 (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

## II.
### BACKGROUND

Patricia A. was 61 years old on the date of her alleged onset of disability. [Filing No. 11-3 at 2, 11.] She has at least a high school education, [Filing No. 11-2 at 48], and previously worked as a nurse supervisor, case manager, medical case manager, secretary, and as an administrative assistant prior to her alleged onset date. [Filing No. 11-3 at 3-6, 13-17.] Patricia A.'s alleges that she can no longer work because of diverticulosis, high blood pressure, high cholesterol, lung

disease, lupus, osteoarthritis, pulmonary fibrosis, and sleep apnea. [Filing No. 11-2 at 40-45; Filing No. 11-3 at 3, 12.][4]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Patricia A. was not disabled. [Filing No. 11-2 at 28.] Specifically, the ALJ found as follows:

- At Step One, Patricia A. had not engaged in substantial gainful activity[5] during the period at issue. [Filing No. 11-2 at 39.]

- At Step Two, Patricia A. "has the following severe impairments: degenerative disc disease of the lumbar spine; COPD; idiopathic pulmonary fibrosis; obstructive sleep apnea; and displaced fracture of the left ankle (with routine healing) (20 CFR 404.1520(c))." [Filing No. 11-2 at 40.]

- At Step Three, Patricia A. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 41.]

- After Step Three but before Step Four, Patricia A. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant requires the ability to alternate between sitting and standing every 25 to 45 minutes, while remaining on task; the claimant can never climb ladders, ropes, or scaffolds, kneel, or crawl; the claimant can occasionally climb ramps and stairs, balance, stoop, crouch, and operate foot controls on the left; the claimant can have only occasional exposure to extreme cold, extreme heat, or humidity; the claimant can have only occasional exposure to environmental pulmonary irritants such as fumes, odors, dusts and gases and poorly ventilated areas; and the claimant can never be exposed to unprotected heights.." [Filing No. 11-2 at 42.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Patricia A.'s RFC, she was unable to perform her past work. [Filing No. 11-2 at 47.]

- At Step Five, relying on the VE's testimony and considering Patricia A.'s age, education, work experience, and RFC, Patricia A. has acquired work skills from

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. [Filing No. 11-2 at 48-49.]

### III.
### Discussion

Patricia A. argues that the ALJ erred: (1) by improperly discrediting her testimony about her symptoms under SSR[6] 16-3p by failing to account for the possible explanations of a conservative course of treatment and her statements about the intensity, persistence and limiting effects of her symptoms; and (2) by failing to discuss Patricia A.'s fatigue and the impact this would have on her ability to maintain employment. [Filing No. 15 at 4.] The Court will consider the arguments in turn.

**A.      Credibility Analysis**

Patricia A. contends that the ALJ's application of SSR 16-3p in evaluating Patricia A.'s subjective symptoms was erroneous. [*see generally* Filing No. 15.] Patricia A. appears to argue that the ALJ, when developing her RFC, erroneously discredited her subjective symptoms based on her activities of daily living and various inconsistencies in the medical record. [Filing No. 15 at 15-19.] The Commissioner argues that the ALJ engaged in a proper analysis of Patricia A.'s symptoms and came to a conclusion supported by the record. [Filing No. 16 at 13-18.]

An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his or her reasoning and it is supported by the record. *Summers*, 864 F.3d at 528. A reviewing court will only overturn an ALJ's subjective symptom analysis if it is "patently wrong." *Id.*

---

[6] Social Security Rulings ("SSR") are interpretive rules intended to offer guidance to ALJs and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Laurer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

SSR16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2017 WL 5180304. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process, and the SSA clarified that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ "must determine whether a claimant has a medically determinable impairment that could reasonably be expected to produce an individual's symptoms." *Srp v. Colvin*, 2016 WL 7507781, at *2 (C.D. Ill. July 14, 2016). If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ "must consider all of the evidence in the record to determine the intensity, persistence, and limiting effects of the claimant's symptoms." *Id.* To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

2017 WL 5180304, at *4. In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating

7

factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); see 20 CFR § 404.1529(c); SSR 16-3p.

Here, the ALJ described medical visits and examinations contained in the record, noting that Patricia A. had diagnoses in the record of a distal fibula fracture of the left ankle, obstructive sleep apnea, degenerative disc disease of the lumbar spine, COPD, and idiopathic pulmonary fibrosis. [Filing No. 11-2 at 43-45.] This undertaking satisfies step one of the SSR 16-3p process.

For step two of the process, in reviewing the medical evidence and testimony presented at the hearing, the ALJ found that Patricia A.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 11-2 at 43.] This language alone, is "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### 1. *Daily Activities*

Patricia A. asserts that the ALJ's subjective symptom evaluations were patently wrong, finding there is no objective medical evidence in support of such conclusions, and improperly discredited her statements by placing undue weight on Patricia A.'s daily activities and part-time work. [Filing No. 15 at 15-16.] For example, the ALJ found Patricia A.'s statements about her pain and limitations to be inconsistent with Patricia A.'s daily activities, but Patricia A. notes that "[t]he mere listing of daily activities does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful employment." [Filing No. 15 at 16, citing *Nelson v. Colvin*, 2016 WL 337143, at *6 (N.D. Ill. Jan. 27, 2016).] Patricia A. argues that the ALJ's

8

evaluation does not take into consideration how the difference between daily living activities and activities of a full-time job. [Filing No. 15 at 16-17.]

ALJs have been cautioned "not to draw conclusions about a claimant's ability to do work full time based on part-time employment." See *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) "There is a significant difference between being able to work a few hours a week and having the capacity to work fulltime." *Lanigan v. Berryhill*, 865 F.3d 558 (7th Cir. 2017). Additionally, "minimal daily activities ... do not establish that a person is capable of engaging in substantial physical activity." *Clifford*, 227 F.3d at 872; *see Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (concluding that the claimant's "persistence in struggling through household chores despite her pain does not mean, as the ALJ extrapolated, that she can manage the requirements of the work-place" because a person performing chores, unlike an employee, has more flexibility "and is not held to a minimum standard of performance"); *Hill v. Colvin*, 807 F.3d 862, 865, 869 (7th Cir. 2015) (warning against equating the activities of daily living—like babysitting, caring for pets, going to church, visiting with family members, and doing household chores—with those of a full-time job).

The ALJ, however, did not commit these errors here. After listing the objective medical evidence, the ALJ went on to consider other factors, including Patricia A.'s daily living, the intensity, severity, and frequency of her symptoms, and the type of medication or other treatment used to relieve her symptoms, before determining that Patricia A. could perform sedentary work with various other limitations. [Filing No. 11-2 at 43-47.] The ALJ also considered evidence from Reverend Robert T. Hausladen, pastor at St. Joseph Catholic Church (where Patricia A. was employed), noting that Reverend Hausladen indicated Patricia A. "discontinued or limited all of her volunteer activities and rarely participates in social functions." [Filing No. 11-2 at 46.]

9

Additionally, "[Reverend Hausladen] noted that he began to notice a decrease in [Patricia A.'s] job performance, concentration, and energy level." [Filing No. 11-2 at 46.] The ALJ acknowledged that while the statement by Reverent Hausladen was not necessarily a medical opinion, in making the determination to find it reasonable to limit Patricia A. to a sedentary exertional level, she considered Patricia A.'s subjective complaints and Reverend Hausladen's allegations. [Filing No. 11-2 at 46.]

Although the ALJ summarized Patricia A.'s testimony about her ability to do housework and other tasks, the Court fails to find that she inferred from those statements alone that Patricia A. was capable of full-time work. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (noting the ALJ discussed claimant's daily living activities but did not equate them with the ability to work).

### 2. Inconsistencies

Patricia A. then argues the purported inconsistencies cited by the ALJ—such as Patricia A. testifying that she was being evaluated for a lung transplant and the ALJ noting that there have not been any recommendations for surgery, Patricia A. does have the diagnoses of musculoskeletal impairments but "has received relatively conservative treatment," Patricia A.'s "progress and improvement has been noted throughout the record and recent pulmonary function testing has not shown significantly abnormal findings," and "her musculoskeletal and neurological examinations have been mostly unremarkable"—are not inconsistencies and result from the ALJ making assumptions not supported by the record. [Filing No. 11-2 at 46-47; Filing No. 15 at 14-19.]

The Seventh Circuit has cautioned that an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006); *Clifford*, 227 F.3d at 871–72. That is so because "[t]he etiology of

pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." *Id.* Additionally, even if a claimant's subjective symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support the claimant's subjective symptoms. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

Throughout her opinion, the ALJ noted several inconsistencies in the record that undermine Patricia A.'s contentions that her impairments render her unable to work.

First, regarding Patricia A.'s musculoskeletal complaints, the ALJ noted that the "medical evidence of record reveals [Patricia A.'s] diagnosis of degenerative disc disease of the lumbar spine", however "during physical examinations, [Patricia A.] exhibited normal motor strength and tone, normal gait and station, and was able to perform toe, heel and tandem walk." [Filing No. 11-2 at 43.] The ALJ further cited a September 2018 report from an emergency department visit from a fall and experiencing left ankle pain, and an October 2018 follow-up with Patricia A,'s medical sources regarding her left ankle where she reported doing much better, minimal discomfort, and working on range of motion through rehabilitation. [Filing No. 11-2 at 43-44.] Lastly, the ALJ took into consideration Patricia A. testimony that she could stand for 15 to 20 minutes before sitting, sit for 45 minutes before standing, and walk for 25 minutes before sitting. [Filing No. 11-2 at 70, 82.] The RFC ultimately limited Patricia A. to perform sedentary work, allows her to alternate between sitting and standing every 25 to 45 minutes, limits exposure to environmental irritants, and limits her other movement requirements, properly taking into consideration Patricia A.'s subjective statements and objective medical evidence regarding these complaints. [Filing No. 11-2 at 42.]

11

Next, the ALJ evaluated Patricia A.'s IPF diagnoses. [Filing No. 11-2 at 44.] Patricia A. argues that her IPF was treated with OFEV, "a medication with well-known severe side effects," and that the ALJ's classification of conservative treatment with such a medication, was patently wrong. [Filing No. 15 at 17.] The Commissioner argues that the ALJ considered the medication Patricia A. took for her IPF, its mild side effects, and contrasted this treatment with objective medical evidence. [Filing No. 16 at 14-15.]

The ALJ noted that Patricia A. "underwent pulmonary function testing in November of 2018 at the request of the State agency, which revealed a 'probable restriction' but was not dispositive." [Filing No. 11-2 at 44.] In addition, the ALJ recounted the recorded treatments with a pulmonologist and various examinations, noting that "the claimant's pulmonary function testing showed only a mild restriction," and that "spirometry testing also confirmed that the claimant's forced vital capacity and diffusion capacity were only mildly reduced." [Filing No. 11-2 at 44.] The ALJ noted the recommendation for medication management and therapy to treat her IPF diagnosis, and follow-up records revealing oxygen saturation at 98% at rest, no acute distress, and other than loose stools, Patricia A. reported no significant gastrointestinal side effects. [Filing No. 11-2 at 44-45.] The ALJ then documented follow-up records revealing Patricia A.'s pulmonary arteries were normal sized, she demonstrated improved levels of pulmonary expansion, had no changes in spirometry from prior tests, she was exercising 4 to 5 times per week and attending rehab. [Filing No. 11-2 at 45.] The ALJ properly considered Patricia A.'s symptoms and subjective statements, along with the objective medical evidence when completing this analysis.

Lastly, the ALJ noted Patricia A. testified she was going to need a lung transplant but noted that there was no information suggesting an evaluation had occurred by a surgeon, nor had she been placed on a transplant list at the time of the RFC determination. [Filing No.11-2 at 47.]

Patricia A. notes that while she was determined to be ineligible for a lung transplant one month following the hearing date, she argues the ALJ should have considered explanations for conservative treatment. [Filing No. 15 at 17-18.] Overall, the ALJ did not overlook Patricia A.'s subjective statements on her physical abilities compared to objective medical evidence, addressing such limitations in the RFC, and did not rely solely on the fact that Patricia A.'s treatment was conservative; she also observed that conservative measures were effective in addressing at least some of her physical symptoms and largely successful. The ALJ noted that there were no indications that the continued treatment would not be effective at this time and there was no indication she was eligible for a transplant, warranting further limitations. [Filing No. 11-2 at 47.]

Accordingly, the Court concludes that the ALJ's SSR 16-3p credibility assessment is tied to substantial evidence in the record and is not patently wrong, thus the Court will not disturb that assessment. See *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

**B.     Fatigue**

Finally, Patricia A. contends that the ALJ failed to address her fatigue and the impact this would have on her ability to maintain employment in her opinion or in the RFC analysis. [Filing No. 15 at 21.] Patricia A. argues that she reported difficulty with fatigue and decreased energy level, citing to her hearing testimony, records from May and June of 2018, January and November of 2019, and the letter from Rev. Hausladen. [Filing No. 15 at 21.] Additionally, Patricia A. argues that the ALJ presented incomplete hypotheticals to the VE because they did not address her issues with fatigue and tiredness. [Filing No. 15 at 22.]

The Commissioner asserts in response that the ALJ adequately considered Patricia A.'s fatigue and drowsiness in her opinion. [Filing No. 16 at 19.] The Commissioner also states that the Plaintiff's argument regarding fatigue is framed as a step five argument, attempting to shift the

burden of proof to the ALJ, but substantial evidence supports the ALJ's ultimate decision. [Filing No. 16 at 18.] Further, the Commissioner argues that the record shows the hypothetical questions included each assessed limitation; namely that while "fatigue" is not a functional limitation, sedentary work with the ability to change positions and other postural restrictions are functional limitations that account for fatigue. [Filing No. 16 at 19.]

Patricia A. replies that the Commissioner misses the crux of her argument, that the ALJ failed to consider or explain why they did not consider persistent fatigue in the RFC analysis. [Filing No. 17 at 2.] Patricia A. argues that while the disregarding of this evidence would have implications for Step Five, this is merely a result of not incorporating such limitations into the RFC analysis. [Filing No. 17 at 2.]

Although Patricia A. seems to argue the ALJ dismissed her fatigue and drowsiness entirely without any consideration, the ALJ's opinion demonstrates the opposite. The ALJ explicitly mentions records that Patricia A. cites to in her attempt to prove the ALJ ignored her complaints of fatigue. [Filing No. 11-2 at 44-46.] The ALJ discusses Patricia A.'s claims that her respiratory impairments of IPF and COPD cause her fatigue, noting treatments and medical evaluations in the record, and noted that while she was diagnosed with obstructive sleep apnea, a sleep study showed only mildly reduced sleep efficiency. [Filing No. 11-2 at 43, 45.] Contrary to Patricia A.'s assertions in her brief, the ALJ explicitly considered sleep apnea and fatigue.

In an attempt to bolster her claim, Patricia A. cites to *Allensworth v. Colvin*, 814 F.3d 831 (7th Cir. 2016). Patricia A.'s reliance on this case is misplaced. In *Allensworth*, the Seventh Circuit found the ALJ did not give proper weight to a treating physician's opinion on the claimant's marked effects of sleeplessness and hypersomnia on his abilities to work at a consistent pace and to concentrate. 814 F.3d at 834. Here, the ALJ found that Patricia A. was diagnosed with obstructive

sleep apnea, which was confirmed through a sleep study, and Patricia A. recommended to use a CPAP machine. [Filing No. 11-2 at 45.] However, the ALJ noted the sleep study showed mildly reduced sleep efficiency and there was no other significant medical evidence within the record of further treatment relating to this impairment. [Filing No. 11-2 at 45.] The only other evidence that Patricia A. suffers any further limitations from sleep apnea or fatigue comes from her self-reported complaints. While this Court understands that it is improper to reject a claimant's subjective complaints solely because there is little or no objective medical evidence in the record in support, *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), that consideration does not affect the ALJ's proper conclusion here that there is no medical evidence in the record to support any greater limitations related to fatigue. *See* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled.")

Relatedly, Patricia A. argues the ALJ failed to provide the VE with a complete picture of her limitations by not including fatigue and tiredness in the hypothetical. [Filing No. 15 at 21-22.] "In this circuit, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Shonda S. v. Berryhill*, No. 1:18-cv-00715-JRS-MJD, 2019 WL 1323922, at *7 (S.D. Ind. Mar. 25, 2019) (*citing Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994)). Because this Court has determined the ALJ properly considered Patricia A.'s complaints of fatigue and tiredness, and that no further limitations were warranted based on the record at hand, this last argument is moot. As noted above, Patricia A. has failed to support her claims of fatigue and tiredness with substantial evidence, thus the ALJ was not required to include these limitations in the hypotheticals to the VE.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Patricia A. benefits. Final judgment will issue accordingly.

Date: 3/22/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**